


**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

Rod J. Rosenstein
United States Attorney

Paul E. Budlow
Assistant United States Attorney
Paul.Budlow@usdoj.gov

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4917
MAIN: 410-209-4800
FAX: 410-962-3091
TTY/TDD: 410-962-4462

October 4, 2012

Patrick Kent, Esquire
Office of the Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, Maryland 21201

    Re:    United States v. Terrance Dion Robinson
            Criminal #: JKB-11-0658

Dear Mr. Kent:

    This letter confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by October 4, 2012, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to plead guilty to Counts One, Two, Three, Four, Five, Six, Seven and Eight of the Superseding Indictment now pending against him, all of which charge him with Production of Child Pornography in violation of 18 U.S.C. § 2251(a). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead

1

JKB-11-0658
Gov't Exhibit 1

guilty, and which this Office would prove if the case went to trial, are as follows:

That on or about the dates specified in Counts One through Eight of the Superseding Indictment, in the District of Maryland, and elsewhere, the Defendant:

    a.    Knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

    b.    For the purpose of producing a visual depiction of such conduct; and

    c.    The Defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

## Penalties

3. (a) The maximum sentence provided by statute *for each* of the offenses to which your client is pleading guilty is as follows: because the defendant has two or more prior convictions relating to the sexual exploitation of children, a minimum of thirty-five (35) years' imprisonment and a maximum of life imprisonment, a $250,000 fine and supervised release for life. In addition, the Defendant must pay $800 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

(b) The defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

## Waiver of Rights

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

   d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

   e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

   g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.  This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

### Guidelines for Counts One Through Eight

a.  Pursuant to U.S.S.G. § 2G2.1(a), the base offense level is 32.

b.  Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. Subtotal = 36.

c.  Pursuant to U.S.S.G. § 2G2.1(2)(A), there is a two level increase because the offense involved the commission of a sexual act or sexual contact. Subtotal = 38.

d.  Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the custody, care, or supervisory control of the defendant. Subtotal = 40.

### Guidelines for Relevant Conduct: Receipt of Child Pornography

e.  Pursuant to § 2G2.2(a)(2), the base offense level for receipt of child

4

pornography is a level 22.

   f. Under § 2G2.2(b)(2), 2 levels are added because the material involved prepubescent minors.  Subtotal = 24.

   g. Under § 2G2.2(b)(5), 5 levels are added because the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.  Subtotal = 29.

   h. Under § 2G2.2(b)(6), 2 levels are added because your client used a computer or an interactive computer service for the distribution of the material.  Subtotal = 31.

   i. Under § 2G2.2(b)(7)(C), 4 levels are added because the offense involved more than 600 images.  Subtotal=36.

  Grouping:

   j. Pursuant to U.S.S.G. §§ 1B1.2, 3D1.2 and 3D1.4, neither Counts One through Eight nor the group for relevant conduct (receipt) group and the highest offense level (40) is increased by five (5) levels for a total of 45.

   k. Thus, the combined offense level is 45.

  7. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct.  This Office may oppose *any* adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

  Thus, the final anticipated base offense level is **43.**

  8. Except as set forth above, this Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4 or 5 of the United States Sentencing Guidelines will be raised or are in dispute (except as mentioned in paragraph 9).

  9. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which

he derived a substantial portion of his income. This Office reserves the right to argue for an upward departure based on inadequacy of criminal history under U.S.S.G. § 4A1.3(a).

### Obligations of the United States Attorney's Office

10. At the time of sentencing, this Office will recommend a sentence of 70 years of incarceration. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

11. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### The Defendant's Sentencing Recommendation

12. At the time of sentencing, the Defendant agrees to recommend a sentence of no less than 40 years of incarceration.

### Waiver of Appeal

13. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

14. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) files a motion to withdraw his guilty plea, or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Forfeiture

15. The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence at 1252 Washington Blvd, Baltimore, Maryland 21230 on October 18, 2010, as described in Attachment A to this Plea Agreement. He further agrees to take whatever steps are necessary to pass clear title to those properties to the United States.

### Court Not a Party

16. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor

the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

17.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Paul Budlow
Assistant United States Attorney

Christine Duey
Special Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10-4-11
Date

_____
Terrance Dion Robinson

I am Mr. Robinson's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

10-4-11
Date

_____
Patrick Kent, Esquire

8

## Attachment A
## Statement of Facts

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Terrance Dion Robinson ("Robinson") age 39, is a registered sex offender who resides in Baltimore, Maryland. As detailed below, between 2007 and 2010, Robinson produced images and videos of two minors engaged in sexually explicit conduct. Additionally, Robinson used a publicly available file sharing program, to download images and videos of child pornography from the internet. Robinson saved the images and videos to his laptop computer, external hard drive, and to other digital media.

Robinson's has more than two prior convictions that relate to the sexual exploitation of children, as set forth in 18 U.S.C. § 2251(e), and is therefore subject to a minimum sentence of 35 years imprisonment and a maximum sentence of life imprisonment as to each count of conviction.

Robinson's prior sex offenses are as follows:

1. First, on June 29, 1995, Robinson pled guilty in the Circuit Court for Montgomery County, Maryland, under case #s 74320C & 74318C, to two counts of child abuse and two counts of production of Child Pornography. The offenses occurred in July of 1994, and involved the defendant committing sex acts with a seventeen year old female and a fourteen year old male, and taking pornographic pictures of both victims. Robinson was sentenced on November 29, 1995 to a total of 40 years incarceration, with all but 4 years suspended. Robinson was also placed on 5 years probation for those offenses.

2. Second, on August 8, 1996, Robinson pled guilty in the Circuit Court for Montgomery County, Maryland under case # 77207-C, 77208-C, 77209-C, and 77210-C, to four counts of Third Degree Sex offense. Three of the offenses occurred in the summer of 1993, and involved the defendant committing sex acts with three minor boys, ages 4, 5, and 14. One of the offenses occurred in 1994 when the fourth victim was 13 years old. On October 24, 1996, Robinson was sentenced to 10 years incarceration, with all but 6 years suspended. The sentences ran consecutive to the 1995 convictions mentioned above.

In 2005, Robinson was mandatorily released from the Maryland Department of Corrections, and by the summer of 2007, Robinson was living in Baltimore City, at 1252 Washington Blvd, Baltimore, Maryland 21230. ███████████████

1

▓▓▓▓▓▓▓▓▓▓▓▓ Starting in 2007, ▓▓▓▓▓▓ spent time with Robinson, ▓▓▓▓▓▓▓▓▓▓▓▓ at his home on Washington Blvd. During these visits, no other adults were present. Beginning no later than 2007, and continuing through October 2010, while Robinson was alone with ▓▓ and ▓▓ Robinson produced images of ▓▓ and ▓▓ engaged in sexually explicit conduct. In each instance of production of child pornography detailed below, ▓▓ and ▓▓ were in the defendant's ▓▓▓▓▓▓▓▓▓▓

Count 1:

Sometime between May 2007 and August 2008, the defendant produced approximately 8 photographs which depict ▓▓ a prepubescent male, naked and partially naked, and focused on ▓▓ penis. In the images, the defendant's hand is touching ▓▓ penis. The images were produced using a camera with parts made by Sunplus, manufactured in Taiwan. The images were saved on a Sony DVD that was found in the defendant's home. The Sony DVD was manufactured in Taiwan.

Count 2:

Sometime between July 2007 and August 2008, the defendant produced a photograph which depicts ▓▓ a prepubescent male, partially naked and focused on ▓▓ penis. The images were produced using a camera with parts made by Sunplus, manufactured in Taiwan. The images were saved on a Sony DVD that was found in the defendant's home. The Sony DVD was manufactured in Taiwan.

Count 3:

Sometime between July 2007 and August 2008, the defendant produced a series of photographs which depicts ▓▓ a prepubescent male, naked and partially naked and in various poses, and focused on ▓▓ penis. The images were produced using a camera with parts made by Sunplus, manufactured in Taiwan. The images were saved on a Sony DVD that was found in the defendant's home. The Sony DVD was manufactured in Taiwan.

Count 4:

Sometime between July 2007 and January 2009, the defendant produced approximately 7 photographs which depict ▓▓ a prepubescent female, partially naked and in various poses, and focused on ▓▓ vagina. The images were produced using a camera with parts made by Sunplus, manufactured in Taiwan. The images were saved on a Sony DVD that was found in the defendant's home. The Sony DVD was manufactured in Taiwan.

2

Count 5:

Sometime between July 2007 and January 2009, the defendant produced approximately 11 photographs which depict ▮ a prepubescent female, naked and partially naked and in various poses, and focused on ▮ vagina. The images were produced using a Fuji Finepix camera, which was manufactured in China. The images were saved on a Sony DVD that was found in the defendant's home. The Sony DVD was manufactured in Taiwan.

Count 6:

Sometime between January 2009 and October 2010 the defendant produced approximately 28 photographs, which depict ▮ a prepubescent female, naked and partially naked and in various poses, and focused on ▮ vagina. In the photographs, the defendant is using his hands and fingers to spread open ▮ vagina. The images were produced using a Fuji Finepix camera, which was manufactured in China. The images were saved on a Western Digital external hard drive that was manufactured in Thailand and found in the defendant's home.

Count 7:

Sometime between January 2009 and October 2010 the defendant produced a video titled "Failed attempt 2 pee in a bottle.mp4", which depicts ▮ a prepubescent female, nude from the waist down, and focused on ▮ vagina as ▮ attempts to urinate in a bottle. The defendant produced the video using an HTC smart phone that was manufactured in Taiwan. The video was saved on a Western Digital external hard drive that was found in the defendant's home. The Western Digital external hard drive was manufactured Thailand.

Count 8:

Sometime between January 2009 and October 2010 the defendant produced a video titled "VIDEO_023.mp4 ", which depicts ▮ a prepubescent male, nude from the waist down, focused on ▮ penis while ▮ is standing in front of a toilet. The defendant produced the video using an HTC smart phone that was manufactured in Taiwan. The video was saved on a Western Digital external hard drive that was found in the defendant's home. The Western Digital external hard drive was manufactured Thailand.

Relevant Conduct:

Sometime between July 2008 and October 2010, the defendant produced approximately 6 photographs which depict ▮ a prepubescent female, naked and partially naked and in various poses, and focused on ▮ vagina. The images were produced using a Fuji Finepix camera, which was manufactured in China. The photographs were saved on a Western Digital external hard drive that was manufactured in Thailand and found in the defendant's home.

On October 18, 2010, detectives from the Child Abuse Unit of the Baltimore City Police Department searched Robinson's residence at 1252 Washington Blvd, Baltimore, Maryland

3

21230, pursuant to a search warrant. The lease to the home was in Robinson's name, and in October 2010, Robinson was the only resident of the home. During the execution of the search warrant, investigators seized Robinson's computer equipment and digital camera, further described as:

- One Dell Latitude Laptop D810, service tag No. 7W4ZY91;
- One Western Digital External Hard Drive, model: DAJMHC, S/N: WCAV59714987;
- Numerous thumb drives, flash drives, and SD cards;
- 2 air cards;
- One Fujifilm FinePix A805 digital camera, s/n: 7CB87513;
- One Epson printer; and
- 179 CDs and DVDs.

Investigators found images and videos of child pornography on the laptop computer, the external hard drive, and some of the CDs and DVDs. The laptop computer contained numerous images of children engaged in sexually explicit conduct, including at least 4 videos. The videos were downloaded from the internet in 2010 using a file sharing program, and are described here:

1. Titled "001.part (Ptsc 3Yo Charlene Tonguefuking My Toddler Girls Cunny Her 1St Pp Orgasm Relief,Pagan,Witch,Nudist,Child Vagina Penis Love Religion Pthc.mpg)": The video depicts an adult male performing oral sex on a naked prepubescent female. The video's created date is 04/14/2010;

2. Titled "006.part (PTHC -G- Kindergarten▆▆ - Masturbates 35sec.mpg)": The beginning of the video displays the words "6 year old ▆▆ Masturbates". The video depicts a prepubescent female, naked from waist down, masturbating. The video's created date is 03/06/2010.

3. Titled "010.part ((Pthc) 4Yo 8Yo 11Yo Girls Compilation (Search Words - Pthc Babyj Hussyfan Kleuterkutje Cbaby R@ygold Kinderkutje Valya Kingpass Babyshivid Childlover).mpg)": The video depicts a prepubescent naked female touching her genitalia with a vibrator. As the video continues an adult penis penetrates the prepubescent female's vagina. The video's created date is 06/21/2010; and

4. Titled "011.part (Kleuterkutje CBaby Frifam- Giggling Little Angel 3yo Horny Gladly Opens Vulva & Lifts Dress So Daddy Can Lick & Fuck-PRECIOUS-toddler'.mpg)": The video depicts an adult male performing oral sex on a prepubescent female who is not wearing any pants or underwear. The prepubescent female has a pacifier in her mouth. As the video continues and the prepubescent female touches her genitalia with her hands. The video progresses and an adult penis rubs the prepubescent female's genitalia. The video's created date is 06/21/2010.

The digital media seized from Robinson's home contained videos and images of child pornography, in excess of 600 images. Many of these were downloaded from the internet. In

addition to the child pornography, the laptop computer and external hard drive contained thousands of images of child modeling and child erotica, including photos of nude children bathing and on the beach.

Robinson's computer also contained encryption software that was used to encrypt volumes containing child pornography and child erotica. Data wiping software was found on the CDs and DVDs. The forensic examination of the computer, external hard drive, thumb drives, flash drives, CDs and DVDs revealed that Robinson regularly searched for files, websites and discussions relating to child pornography, incest and encryption.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

_____<br>Terrance Dion Robinson